LaJoyce L. Porter, State Bar No. CA 221166
PORTER LAW FIRM
1990 N. California Blvd, 8th Floor
Walnut Creek, CA 94596
Telephone:   (925) 464-1401 Ext. 1
Facsimile:    (925) 464-1402
Email: lajoyce@lporterlaw.com

Attorney for D.M. on behalf of her daughter, S.M.
Attorney for Plaintiff (s)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.M., Individually, (a Disabled Adult by and through her parent and guardian ad litem), D.M., Individually,<br><br>Plaintiff(s),<br><br>vs.<br><br>SAN LEANDRO UNIFIED SCHOOL DISTRICT, a local education agency; MID ALAMEDA COUNTY SPECIAL EDUCATION LOCAL PLAN AREA, and DOES 1 TO 10,<br><br>Defendant(s). | Case No. 4:21 – cv – 01651<br><br>PLAINTIFF'S COMPLAINT TO ENFORCE SETTLEMENT AGREEMENT UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION IMPROVEMENT ACT (20 § U.S.C. 1415 ET. Seq..); OR IN THE ALTERNATIVE COMPLAINT FOR ENFORCEMENT OF MEDIATED SETTLEMENT AGREEMENT RESULTING IN A DENIAL OF FAPE |

## INTRODUCTION

1. This action is commenced to seek an order (1) enforcing the FINAL SETTLEMENT AGREEMENT AND GENERAL RELEASE dated March 8, 2017 that was finalized through a mediation held by the Office of Administrative Hearings ("OAH") that same day

and (2) awarding appropriate relief under the Individual with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C.§1415 et seq., including attorney's fees and costs pursuant to that statute.

2. Pursuant to the IDEIA, either parents or District may present a complaint concerning the identification, evaluations, or educational placement of a child, or the provision of a free and appropriate public education ("FAPE") for such child, and have the complaint resolved through an impartial due process administrative hearing. In compliance with the IDEIA, the state of California, through the California Department of Education ("CDE"), has established a due process hearing procedure conducted by the Office of Administrative Hearings ("OAH").

3. When a school district violates the procedural safeguards set forth pursuant to 20 U.S.C. § 1415 *et seq.* designed to protect the rights of children with disabilities and their parents, the parents and the child with a disability are entitled to appropriate relief under the IDEIA.

## JURISDICTION AND VENUE

4. This action arises under the IDEIA (20 U.S.C. §1415 et seq.), and this Court has subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Through the same actions and omission that forms the basis of Plaintiffs' federal claims, Defendant has also violated Plaintiffs' rights under state law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367. This court has jurisdiction over Plaintiff's claim for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

5. The Northern District Court of California is the proper venue because Plaintiffs and Defendant are located in this district and the claims arose in this district pursuant to 28 U.S.C. § 1391(b).

6. Plaintiffs' claims under the IDEIA are properly brought because Plaintiffs' administrative remedies have been exhausted within the meaning of 20 U.S.C. § 1415(F)(i-iii);

## STANDARD OF REVIEW

7. In evaluating a case filed under the IDEIA, the District Court "shall receive the records of the [state] administrative proceeding, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. §1415(e)(2). The District Court proceeding "under the IDEIA is a hybrid, akin to trial de novo" *Union School District v. Smith,* 15 F.3d 1519, 1524 (9th Cir. 1994).

8. The reviewing court must determine whether the school district met the legal requirements of the IDEIA, looking to the very specific facts of the particular case at hand *San Rafael Elementary School District v. California Special Education Hearing Office*, 482 F.Supp.2d 1 152, 219 Ed. Law Rep. 676 (N.D. Cal. 2007).

## PARTIES

9. Plaintiffs in this proceeding[1] are S.M., a disabled adult student, who has not been declared incompetent, but has assigned her rights under the IDEA to her Mother, D.M., on behalf of S.M and in her in own individual capacity as S.M.'s Parent. At all times relating to this matter, Plaintiffs have resided in the City of San Leandro, located in the County of Alameda, in the State of California. San Leandro is located within the boundaries of Defendant, San Leandro Unified School District ("SLUSD" or "District").

10. Plaintiff S.M. has diagnoses of Autism and Other Health Impairment, Post-Traumatic Stress Disorder ("PTSD"), Anxiety and Depression.

11. Defendant SLUSD is a public school district located in Alameda County, California duly organized and existing pursuant to the laws of the State of California and is a Local Education Agency ("LEA") within the meaning of the IDEIA. SLUSD is a recipient of federal financial assistance for purposes of the IDEIA. At all times relevant, SLUSD was and is the LEA responsible for S.M. as a student with a disability within the meaning of the IDEIA. SLUSD is governed by the laws of the State of California, the laws of the United States, and the Constitution of the United States in carrying out its duties and responsibilities.

12. Defendant, SAN LEANDRO UNIFIED SCHOOL DISTRICT SPECIAL EDUCATION LOCAL PLAN AREA (the "SELPA") is the regional agency, created under

---

[1] Plaintiffs in this case will be proceeding under a pseudonym and will be using their initials in lieu of their actual names. Plaintiffs' attorney will be filing the appropriate motion and declaration to request permission to proceed under a pseudonym accompanying this complaint.

PLAINTIFFS' COMPLAINT TO ENFORCE MEDIATED SETTLEMENT AGREEMENT

4

the authority of the IDEIA, to oversee the funding of special education and to ensure implementation of the state and federal special education laws.

## STATEMENT OF FACTS

13. S.M., who was born December 29, 2000, has multiple learning disabilities and has been struggling in the classroom since she came to the District in second grade. At all times referenced herein, S.M.'s school district of residence was and remains SLUSD.

14. SLUSD ignored D.M.'s request for assessment beginning in 2010 and instead offered S.M. social skills classes once a week during a Student Study Team meeting. S.M. was first determined eligible for special education and related services on May 23, 2014 under the category of Other Health Impairment (OHI). In spite of the extensive number of social skills classes she received, she was not assessed for Autism.

15. On or around March 12, 2015 S.M. was confronted by two female classmates who told Vice-Principal, Julie Thomas they were "going to kick her ass." Apparently, Ms. Thomas did not take S.M.'s threats seriously as she did not call D.M. to make her aware of the altercation so D.M. could keep S.M. safe. The very next day, S.M. was brutally attacked by the same two female students who had confronted her the day before

16. D.M. did not believe S.M. was safe to return to school and contacted SLUSD on March 14, 2015 to request an emergency IEP. SLUSD sent a notice scheduling an IEP meeting on March 20, 2015.

17. On March 19, 2015, Student went to the San Leandro library during for her afternoon book club meeting. Although it is a closed campus, the same two females left Bancroft Middle School and went to the library looking for S.M., found her and attacked

her again. Since the Students had not been suspended or expelled for the attack, they were not deterred from attacking S.M. again. S.M. sustained a concussion as a result of the March 19, 2015 attack and had to be treated at Kaiser Permanente in San Leandro.

18. Due to fact that SLUSD only has one comprehensive high school, San Leandro High School, S.M. was transferred to Redwood High School in Castro Valley on August 21, 2015 for safety reasons.

19. On October 4, 2015, S.M. was diagnosed with Autism by Dr. Elea Bernou. SLUSD refused to acknowledge S.M.'s Autism diagnosis and disagreed with it, noting they would get their own assessment.

20. Unbeknownst to D.M. and S.M., Redwood was not a comprehensive high school. S.M. did not learn of this fact until March of 2016 during an IEP meeting. D.M. prepared an addendum to the March IEP rejecting the placement, but SLUSD never attempted to address D.M's concerns and NEVER filed for Due Process to get a finding that the IEP was appropriate.

19. D.M. filed for Due Process on January 31, 2017 and the parties attended a mediation through the Office of Administrative Hearings on March 8, 2017. The parties settled the case at the mediation. A true and correct copy of the results of the mediation are enclosed as Exhibit A. In this FINAL SETTLEMENT AGREEMENT AND GENERAL RELEASE (A true and correct copy of the results of the mediation are enclosed as Exhibit B), SLUSD agreed to the following:

I. Educational Placement

1. The District shall fund Student's placement Bayhill High School ("Bayhill"), a Non-Public School ("NPS"), through the Student's IEP. Student shall begin at Bayhill no later than March 20, 2017.

2. The District shall provide round-trip transportation for Student to Bayhill.

3. The District shall fund 1 hour per week of direct speech and language therapy through Bayhill. If Bayhill is unable to provide these services, the District shall contract with the Non-Public Agency for the purposes of delivering Speech and Language Therapy shall in included in the IEP.

4. The Student shall receive 2 sessions per month of "lunch bunch" social skills services at Bayhill through her IEP. The Bayhill placement integrates additional social skills into its program, and these integrated services will not be set apart as a separate service in the IEP.

5. The District shall fund 1 hour per week of Educationally Related Mental Health Services (ERMHS) to be provided by Bayhill. The 1 hour per week shall be included in the IEP.

6. The District shall fund a bank of 10 hours/year for Occupational Therapy consult services through a Non-Public Agency. These Occupational Therapy consult services shall be included in the IEP.

7. A 30-day transition IEP will be held at Bayhill follow Student's initial placement at the NPS on or before April 20, 2017, and the terms of the Section 1 of this Agreement shall be included in the IEP as part of the April 2017 annual offer of FAPE.

8. The annual review date for Student's IEP shall be reset to the date of the 30-day IEP that is to be held on or before April 28, 2017.

PLAINTIFFS' COMPLAINT TO ENFORCE MEDIATED SETTLEMENT AGREEMENT
7

20. The settlement agreement was contingent on school board approval and the board meeting was scheduled for April 14, 2017. Thus, the agreement was not final until it was approved on that date.

21. S.M.'s 30-day IEP was held on April 27, 2017. Due to her lack of social skills, Bayhill reported that S.M. scared other Students and she was asked to leave within the 30-day review period.

22. The IEP team agreement to place S.M. at Phillips Academy on May 16, 2017. Phillips DID NOT provide social skills at their location. D.M. requested that SLUSD fund the social skills services through a nonpublic agency (NPA) since Phillips did not provide these services. The May 16, 2017 provided for social skills group 60-minute session 2x a month. Unfortunately, the District NEVER provided these services.

23. Beginning in January of 2018, the District held a series of IEP meetings discussing the social skills. On May 9, 2018, S.M.'s attorney requested an increase in social skills group because most of the groups provided services once a week for 60 minutes and it would be disruptive to S.M's group to only come twice a week as the Student are paired in compatible groups. The District agreement to respond on June 1, 2018, but on June 1, 2018, the hours remained at 2 hours per month BUT SLUSD NEVER provided these services.

24. Student continued to have continued social skills problems which created numerous IEP meetings for D.M. to attend and eventually S.M. was provided with a 20-day notice for her to leave Phillips on February 6, 2019.

PLAINTIFFS' COMPLAINT TO ENFORCE MEDIATED SETTLEMENT AGREEMENT
8

25.    On February 28, 2019, SLUSD placed S.M. at True Life Center ("TLC") pending acceptance of S.M. who started at TLC on March 25, 2019.

26.    S.M.'s 30-day IEP review meeting was held on May 2, 2019.  Once again, due to her impaired social skills and SLUSD's continued refusal to provide these much-needed services, once again, S.M. was asked to leave TLC.

27.    By this time, S.M.'s attorney had been suffering from a chronic pain condition and eventually had surgery in June of 2019.  This was followed by extensive physical therapy for 8 months until it was discontinued by COVID.

28.    After S.M. left TLC, SLUSD has offered placements that they are fully aware do not provide S.M. with a FAPE.

29.    S.M. obtained a job as a Vet tech, but was eventually fired due to her inability to interact appropriately with her coworkers.  SLUSD's failure to provide S.M. with the necessary services listed in the March 8, 2017 IEP not only impacts her ability to receive a Free Appropriate Public Education (FAPE) it has also impacted her ability be gainfully employed.

## FIRST CLAIM FOR RELIEF

**In spite of S.M. and D.M.'s request that the Court calculate the hours owed to S.M. due to SLUSD's failure to honor the March 8, 2017 settlement agreement.**

30.    Paragraphs 1 through 29 are re-alleged herein as if fully stated.

31.    SLUSD was fully aware that they were required to provide S.M. with the services listed in her March 8, 2017 settlement agreement, but they blatantly refused to do so.  This

denied S.M. a FAPE. As a result, S.M. was unsuccessful in every subsequent placement due to her impaired social skills.

32. It has been well established that OAH does not have the authority to enforce settlement agreements. While Plaintiff acknowledges that OAH does not have authority to enforce settlement agreements. *Wiener v. Manhattan Beach Unified School District* (9th Circuit) 223 F. 3d at 1030, the Northern District Court has recognized OAH's jurisdiction to adjudicate claims alleging a denial of a FAPE as a result of a violation of a mediated settlement agreement, as opposed to "merely a breach" of the mediated settlement agreement that should be addressed by the California Department of Education's compliance complaint procedure. *Pedraza v. Alameda Unified Sch. Dist.* (N.D. Cal., Mar. 27, *2007,* No. C 05- 04977) 2007 WL 949603, pp. 4-5.

33. S.M. required social skills, mental health therapy, speech and language services and occupational therapy services in order to receive a FAPE. S.M.'s frequent placement changes services as evidence demonstrating that S.M. required the above-listed services, especially social skills in order to receive a FAPE. cannot be ignored for the period of the settlement agreement. Moreover, the fact that SLUSD memorialized all of these services in an IEP is further evidence that even the District believed that S.M. required these services in order to obtain a FAPE.

## SECOND CLAIM FOR RELIEF

**Plaintiffs request that SLUSD be required to provide additional compensatory services as S.M. has regressed to do SLUSD's failure to provide the necessary services listed in her March 8, 2017 Settlement Agreement.**

34.     Paragraphs 1 through 33 are re-alleged herein as if fully stated.

35.     Plaintiffs contend that evidence clearly established that Plaintiffs were entitled to the services outlined in the March 8, 2017 settlement agreement. In spite of SLUSD's promises, they have never provided S.M. with the necessary s services she so desperately needs. In fact, their failure to provide her with these much-needed services has impacted her ability to interact with her peers and has also affected her ability to maintain employment due to her failure to appropriately interact with her coworkers.

### THIRD CLAIM FOR RELIEF

**D.M. and S.M. have ADA and Sec. 1983 claims that are being exhausted in a Due Process Hearing.**

36.     Paragraphs 1 through 35 are re-alleged herein as if fully stated.

37.      S.M. and D.M. have filed a Due Process Request on February 1, 2021 with OAH Case No 2021020065 and has raised these issues for the purpose of exhaustion. Pending the outcome of the Due Process, S.M. will be requesting relief accordingly in this court.

*//*

*//*

*//*

*//*

## **PRAYER FOR RELIEF**

1. The Plaintiffs request that this Court, upon review of the evidence present order SLUSD to provide S.M with the necessary services .

2. The Plaintiffs request that this Court grant such relief as it deems just and appropriate under the IDEIA, including:

March 8, 2021                    By:      /s/ LaJoyce L. Porter
                                          _____
                                          LaJoyce L. Porter, Esq.
                                          PORTER LAW FIRM
                                          Attorney for Plaintiff

## DECLARATION OF LAJOYCE L. PORTER

I, LaJoyce L. Porter, declare and state as follows:

1    I am over 18 years of age and I work in Walnut Creek, California in Contra Costa County.

2    I am the attorney of record on this matter; I am a Sole Practitioner and Principal of PORTER LAW FIRM and I represented plaintiffs in OAH Case NO. 2017020052. I am familiar with the procedures in my office for receiving documents and have personal knowledge of all matters of representation of Plaintiffs in the underlying due process case, OAH Case Number 2017020052.

3    Attached hereto is a true and correct copy of the settlement agreement held by the Office of Administrative Hearing in OAH Case Number 2017020052 dated March 8, 2017.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed at Tempe, Arizona on the 8th day of March, 2021

                                 /s/ LaJoyce L. Porter
                                 _____
                                 LAJOYCE L. PORTER, ESQ.